IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. VANTINE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CALINDA VANTINE, ALSO KNOWN AS CALINDA BARTHEL, APPELLANT.

Filed August 14, 2018.    No. A-17-1173.

Appeal from the District Court for Sioux County: TRAVIS P. O'GORMAN, Judge. Affirmed.

Justin J. Cook, of Lincoln Law, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Sarah E. Marfisi for appellee.

MOORE, Chief Judge, and ARTERBURN and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Calinda Vantine, also known as Calinda Barthel, appeals her plea-based convictions for theft by deception ($5,000 or more), a Class IIA felony; theft by deception ($1,500 to $5,000), a Class IV felony; and conspiracy, a Class IIA felony. She contends that the sentences imposed were excessive and that she received ineffective assistance of trial counsel. Finding no merit to the arguments raised by Vantine on direct appeal, we affirm her convictions and sentences.

## II. STATEMENT OF FACTS

Vantine was charged in an amended information with five counts of theft by deception, Class IIA felonies; one count of theft by deception, a Class IV felony; and one count of conspiracy, a Class IIA felony. Pursuant to a plea agreement, Vantine pled no contest to a second amended information charging her with theft by deception ($5,000 or more), a Class IIA felony; theft by deception ($1,500 to $5,000), a Class IV felony; and conspiracy to commit theft by deception, a

Class IIA felony. The remaining charges were dismissed by the State. Also as part of the plea agreement, the State agreed to dismiss a Dawes County case charging Vantine with theft by deception, a Class IIA felony. The State also agreed not to file any additional charges against Vantine arising from the events of February 3, 2015, through February 17, 2017, or any other ongoing investigations.

The factual basis provided by the State set forth that Bradley Bolek contracted with Vantine on November 12, 2015, to lease pastureland for the 2016 year and that he paid $7,500 at that time. Shortly thereafter, Vantine contacted Bolek again requesting more money and Bolek paid another $7,500 to Vantine. Bolek was under the impression that he would be pasturing his cattle in late May or early June 2016. In early June, Bolek contacted Vantine, who informed him that the land was no longer available and "he could not have the land because an attorney had looked at the papers and did not think it would be appropriate." Prior to May or June, Eric Dalzer and Logan Otto had also leased the land and did have cattle on the pasture.

Regarding count 2, on "February 3," Vantine entered into an agreement with Tony Allen to lease the same property. Allen paid $4,000. At a later time, Allen was told that he could not lease the property because it had been leased to another individual. Regarding count 3, conspiracy, several people were contacted by Vantine and/or her coconspirator regarding leasing the pastureland. Several of those people tendered payment.

At the time of the preparation of the presentence investigation report, Vantine was 27 years old and married, with two dependents. Vantine has a history of deceptive and theft-related behavior as evidenced by six convictions for issuing bad checks. She was also on probation for cruelly treating livestock and attempted theft by unlawful taking at the time of the commission of the current offenses. In connection with the current offenses, payments made to Vantine totaled over $100,000 from eight victims. Vantine admitted that she has abused alcohol and has smoked marijuana and used methamphetamine twice. She also indicated that she has been diagnosed with anxiety, severe depression, reactive attachment disorder, and bipolar disorder. The Level of Service/Case Management Inventory (LS/CMI) assessed Vantine as a high risk to reoffend. Vantine admitted her actions in the current offenses were wrong; however, during two interviews with law enforcement, Vantine argued that "she had to do it because she was pressured to do it by her husband." Her husband denied any involvement and was not charged in the leasing scheme.

At the sentencing hearing, the court stated that it had carefully considered the presentence investigation report (PSR) and had listened to, and considered, the remarks of defense counsel and the county attorney. The court stated that it considered Vantine's age, mentality, education, experience, social background, cultural background, and past criminal record in determining her sentence. The court noted that Vantine has a prior history of deceptive and theft-related actions and that during her current scheme, Vantine had obtained over $100,000 from a number of people. The court stated that anything less than a period of incarceration would depreciate the seriousness of the offense and would promote disrespect for the law. The district court sentenced Vantine to 5 to 10 years' imprisonment on count I, 2 to 2 years' imprisonment on count II, and 5 to 10 years' imprisonment on count III, with all of the sentences ordered to run consecutively. Vantine received credit for 251 days served toward count I. Vantine has timely appealed to this court and is represented by counsel different than that at her plea and sentencing.

## III. ASSIGNMENTS OF ERROR

Vantine contends that the sentences imposed are excessive. She also contends that her trial counsel was ineffective by encouraging her to enter into the plea agreement by advising her that she would receive a lesser sentence or probation. Finally, she claims that her trial counsel was ineffective because, at her sentencing hearing, trial counsel failed to raise the issue to the district court regarding which victims had been compensated and failed to move to continue the sentencing hearing in order to properly advise the court of the restitution made to the victims.

## IV. STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Russell*, 299 Neb. 483, 908 N.W.2d 669 (2018). Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *Id*.

When a defendant's trial counsel is different from his or her appellate counsel, all issues of ineffective assistance of trial counsel that are known to the defendant or are apparent from the record must be raised on direct appeal. *State v. McGuire*, 299 Neb. 762, 910 N.W.2d 144 (2018). If the issues are not raised, they are procedurally barred. *Id*.

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Cotton*, 299 Neb. 650, 910 N.W.2d 102 (2018). An appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id*. An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *State v. Hill*, 298 Neb. 675, 905 N.W.2d 668 (2018).

## V. ANALYSIS

### 1. EXCESSIVE SENTENCE

Vantine was convicted of two Class IIA felonies and was sentenced to 5 to 10 years' imprisonment on each count. Her sentences are within the statutory sentence range of 0 to 20 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Reissue 2016).

Vantine was also convicted of a theft by deception in an amount of at least $1,500 but less than $5,000, which is a Class IV felony. See Neb. Rev. Stat. § 28-518 (Reissue 2016) (grading of theft offenses). Although the second amended information alleged that count II was committed "on or about February 3, 2015," the PSR clearly establishes that the offense was actually committed on February 3, 2016. As the State acknowledges, this is significant because an offense date of February 3, 2015, is prior to the enactment of the changes to the grading of theft offenses and the changes to the felony classifications contained in LB605, whereas a February 3, 2016,

offense date is post-LB605. See Neb. Rev. Stat. § 28-105 (Reissue 2016) (felonies; classification of penalties); § 28-518.

Although the alleged date of the offense was listed as occurring in 2015 rather than 2016, the exact time when a criminal offense is committed is not an essential element of a crime unless the statute defining the offense makes a date or time an indispensable element of the crime charged. *State v. Samayoa*, 292 Neb. 334, 873 N.W.2d 449 (2015). Nebraska's theft by deception statute does not make a date or time an indispensable element of the crime charged. See Neb. Rev. Stat. § 28-512 (Reissue 2016). Further, Vantine has not complained of the inconsistency in the date alleged in count II of the second amended information and the actual date of the offense as established through a combined review of the factual basis presented by the State and the PSR. She has only challenged the excessiveness of her sentences and the alleged ineffectiveness of her trial counsel. As such, our appellate analysis is limited to examining her assigned errors. See *State v. Alba,* 270 Neb. 656, 707 N.W.2d 402 (2005).

The record before this court reflects that Vantine was advised that a Class IV felony carried a possible penalty of up to 2 years' imprisonment, up to a $10,000 fine, or both. Further, Vantine was advised that if she was sentenced to imprisonment, she would be ordered to serve postrelease supervision for a minimum of 9 months and a maximum of 12 months. This advisement related to the post-LB605 penalty for a Class IV felony and correlates with the time the act was committed as provided by a combined review of the factual basis provided by the State and the PSR. Vantine's sentence was within the statutory sentencing range for Class IV felonies committed on February 3, 2016, and she does not contend that this was error.

Rather, Vantine argues:

[T]he trial court should have given consideration to the fact that the crime of which [she] was convicted was not taking advantage of individuals with diminished capacity, was not done while she was in a position of trust, that she was not the primary ring leader, and that [she] did not have a significant criminal history.

Brief for appellant at 9. Despite Vantine's argument to the contrary, the record demonstrates that the district court considered the remarks of counsel, the PSR, and the appropriate sentencing factors. The court noted that Vantine has a prior history of deceptive and theft-related actions and, during her current scheme, Vantine had obtained over $100,000 from a number of people. The court stated that anything less than a period of incarceration would depreciate the seriousness of the offense and would promote a disrespect for the law.

The record adequately demonstrates that Vantine has a criminal history of deceptive and theft-related behavior as evidenced by six convictions for issuing a bad check. She was also on probation for cruelly treating livestock and attempted theft by unlawful taking at the time of the commission of the current offenses. The LS/CMI assessed her as a high risk to reoffend. Further, although Vantine admitted her actions in the current offenses were wrong, she continued to place blame for the extensive scheme to defraud over a dozen people of over tens of thousands of dollars on her mother, who was charged as a coconspirator, and Vantine's husband, who was never charged as being complicit in these offenses.

Vantine also received a significant benefit from her plea agreement in which the State dismissed 4 Class IIA felony charges in the current case and agreed to dismiss a Dawes County

case charging Vantine with another Class IIA felony. The State also agreed not to file any additional charges against Vantine arising from the events of February 3, 2015, through February 17, 2017, or any other ongoing investigations. Considering these factors and the applicable law, we conclude that the sentences imposed by the district court were not excessive and that the court did not abuse its discretion when it sentenced Vantine within the statutory limits.

## 2. Ineffective Assistance of Counsel

### (a) Trial Counsel's Advice Regarding Sentence

Vantine argues that she relied upon trial counsel's promises that if she entered the plea agreement, she would receive a lesser sentence or be sentenced to probation.

The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *State v. Wells*, 300 Neb. 296, 912 N.W.2d 896 (2018). Such a claim may be resolved when the record on direct appeal is sufficient to either affirmatively prove or rebut the merits of the claim. *Id*. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id*.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. McGuire*, 299 Neb. 762, 910 N.W.2d 144 (2018). When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty or no contest. *State v. Barrera-Garrido*, 296 Neb. 647, 895 N.W.2d 661 (2017).

The Nebraska Supreme Court has considered, and rejected, a defendant's claim on direct appeal that trial counsel was ineffective based upon the promise of a particular sentence where the record affirmatively established that the defendant assured the district court on the record that no one had made any promises to induce the plea and the plea was made of the defendant's own free will. In *State v. Vanness*, 300 Neb. 159, 166, 912 N.W.2d 736, 744 (2018), Vanness claimed that her trial counsel advised her to plead guilty because she would receive "'a lenient sentence.'" The Nebraska Supreme Court held that the record on direct appeal affirmatively refuted defendant's claim that trial counsel promised her lenient sentencing where, during the colloquy at the plea hearing, Vanness denied that any threats or promises were made to induce her to enter her pleas of guilty. *State v. Vanness, supra*.

Likewise, in *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015), the Nebraska Supreme Court held that the record on direct appeal affirmatively refuted defendant's claim that his trial counsel promised him he would receive a sentence of 30 to 60 years' imprisonment if he pled no contest. The files and records on direct appeal affirmatively showed that, during the plea hearing, defendant was specifically asked "whether 'any promises or representations' had been made to him 'to get [him] to enter [his] plea,' and he responded '[n]o.'" *Id*. at 160, 864 N.W.2d at 675. Defendant was also specifically asked "whether 'anyone made any promises or representations' to him as to what the 'sentence will be' and again responded '[n]o.'" *Id*. He also

was asked whether any inducement or promise was made to get him to enter his plea, and he again responded "'[n]o.'" *Id*.

Similarly, in the present case, the bill of exceptions establishes that at the plea hearing, the court asked Vantine: "Outside of [the terms of the plea agreement] has anybody made any threats, promises, inducements, or done anything to get you to [plead] guilty or no contest this morning?" Vantine replied, "No, Your Honor." Additionally, the plea agreement signed by Vantine specifically set forth in paragraph 3: "No agreement as to sentence: There is no agreement as to sentence. The State will be free to comment at sentencing. The Defendant, through [her] attorney, is free to argue for whatever sentence the Defendant deems to be appropriate." This record affirmatively refutes Vantine's claim that she was promised a lesser sentence and demonstrates, as a matter of law, that Vantine is not entitled to relief on the this allegation of ineffective assistance of counsel.

### (b) Victim Compensation and Failure to Move to Continue Sentencing Hearing

Vantine contends that trial counsel did not understand which victims had been compensated and counsel should have raised the issue to the district court or moved to continue the sentencing hearing for an adequate accounting to be completed. As mentioned earlier, this court must first consider whether the record is sufficient to adequately review this question. See *State v. Wells*, 300 Neb. 296, 912 N.W.2d 896 (2018).

Despite Vantine's claims that her counsel was confused at the sentencing hearing regarding reimbursement to victims, the PSR adequately documents the information. Specifically, the PSR contains a list of 13 people who collectively paid documented amounts totaling $162,600 to Vantine or her coconspirator to lease the pastureland between November 2015 and February 2017. During the sentencing hearing, the State highlighted eight of the victims, who collectively paid $78,100 to the coconspirators and received no repayment of their money nor any use of the pastureland. The eight victims highlighted by the State included Bolek and Allen, who were the victims identified in counts I and II of the second amended information.

Defense counsel highlighted the names of four other victims from the same list who Vantine claims received partial or full use of the pastureland and identified another victim who settled his claim prior to her arrest. Defense counsel also stated that two victims had sued the defendant and obtained judgments; however, one of the victims specifically stated that he had not received any payment on that judgment and the other victim was identified by the State as a victim who had not received either payment of his money or use of the pastureland. In response to defense counsel's statements, the State admitted some parties did get some benefit, but that the eight victims listed by the State collectively paid $78,100 and received no compensation or benefit. There was no dispute between Vantine and the State regarding which victims had paid amounts to Vantine or her coconspirator and received no compensation or benefit.

In sum, the PSR provided extensive documentation regarding the victim's payments to Vantine and her coconspirator and whether the victims had received any reimbursement or full or partial use of the pastureland. Comments made by the State and defense counsel at the sentencing hearing highlighted different aspects of the information contained in the PSR but were not conflicting. Defense counsel provided the district court with information governing restitution paid

and those persons who obtained full and partial use of the pastureland which was beneficial to Vantine's plea for a lighter sentence. Vantine's claim that her defense counsel was confused and failed to provide this information is refuted by the record. More importantly, the PSR contained the relevant information and there is no allegation that the information in the PSR is inaccurate. Vantine claims her counsel should have requested a continuance of the sentencing hearing in order to obtain an accounting of restitution paid to victims. Because the record reflects extensive information regarding payments and reimbursement and there is no allegation that the information is inaccurate, any motion requesting same would have been unsuccessful. Defense counsel is not ineffective for failing to raise an argument that has no merit. *State v. Burries*, 297 Neb. 367, 900 N.W.2d 483 (2017). The record before this court demonstrates, as a matter of law, that Vantine was not prejudiced by her trial counsel's alleged insufficiency in being confused at the sentencing hearing or failing to move for a continuance of the sentencing hearing.

## VI. CONCLUSION

In sum, the sentences imposed by the district court did not constitute an abuse of discretion. Further, the record on appeal was sufficient to address Vantine's allegations of ineffective assistance of appellate counsel and we find those allegations to be without merit.

AFFIRMED.